**ZIMMERMAN REED LLP**
Caleb L. Marker (CA Bar No. 269721)
Ryan J. Ellersick (CA Bar No. 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
500 7th Ave., 8th Fl.
New York, NY 10018
Tel: (646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Judith Nwaigbo,**
on behalf of herself and all others similarly situated,

Plaintiff,

v.

**HUM Nutrition, Inc.**,

Defendant.

Case No. 2:25-CV-09440

**CLASS ACTION COMPLAINT**

1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.
2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.
3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1750 et seq.

**JURY TRIAL DEMANDED**

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (*see* ¶¶ 11-12, *infra*.). It also has personal jurisdiction over Defendant because California is the jurisdiction where Defendant maintains its principal place of business and conducts substantial business and is where a substantial part of the acts and omissions that Plaintiff complains of occurred.

Plaintiff Judith Nwaigbo, on behalf of herself and others similarly situated, on knowledge as to her own actions, the investigation of Plaintiff's counsel, and otherwise upon information and belief, alleges against Defendant HUM Nutrition, Inc. ("Defendant" or "HUM") as follows:

**PRELIMINARY STATEMENT**

1. This is a class action lawsuit against HUM, which sells a variety of health supplements on its website, www.humnutrition.com, and through third-party retailers. This case is about one of HUM's supplements, the "Flatter Me Fiber GLP-1 Booster," ("GLP-1 Booster"), which Defendant falsely and misleadingly advertises as providing a sustained and meaningful increase to natural GLP-1 levels comparable to actual GLP-1 agonist medications like Ozempic.

2. GLP-1 is a hormone naturally produced by the human body. It serves many functions, including slowing digestion, increasing the sensation of satiety after eating, telling the pancreas when to release insulin, and stopping glucose from entering the bloodstream.

3. Medicines such as Ozempic and Wegovy are GLP-1 agonists—synthetic versions of GLP-1. They are a medicine used to manage type-2 diabetes and are also extremely effective weight loss medications.

4. While naturally occurring GLP-1 is quickly processed by enzymes in the body, giving it a half-life of only 1-2 minutes, GLP-1 agonists are designed to resist enzymes, giving them half-lives as long as 7 days.

5. This longer half-life is what makes GLP-1 agonists an extremely effective weight loss tool, giving users the benefits of the GLP-1 hormone—such as

slower digestion and feelings of satiety—for days rather than minutes.

6. As a result, increasing naturally produced GLP-1 by modest amounts cannot create nearly the same weight loss effects provided by long-lasting GLP-1 agonists like Ozempic.

7. Despite this, HUM deceptively claims that its GLP-1 Booster can naturally increase GLP-1 production to a meaningful level with the effect of "curb[ing] cravings," and allowing users to "escape cravings." HUM prominently represents on its website and social media advertising that its GLP-1 Booster "Doubles GLP-1 Levels."

8. But HUM omits from its marketing claims that simply eating a modest meal raises natural GLP-1 levels by three to five fold. In other words, even if the GLP-1 Booster "doubles" GLP-1 levels, the "doubling" has no meaningful and sustained impact on hunger or satiety, let alone to a degree that would allow consumers to "escape cravings."

9. HUM also takes its deceptive advertising a step further by drawing comparisons to actual GLP-1 agonist medications like Ozempic. For example, HUM refers to its GLP-1 Booster as "Fauxzempic," with claims that the GLP-1 Booster provides a natural alternative to prescription GLP-1 medications. In reality, GLP-1 medications like Ozempic have a half-life of approximately 7 days—resulting in sustained appetite suppression—not the 1-2 minutes associated with naturally increasing GLP-1.

10. Defendant's false and misleading statements caused Plaintiff and members of the proposed classes to pay a price premium for the GLP-1 Booster. Had Plaintiff known the truth, Plaintiff would not have purchased the GLP-1 Booster or would have paid significantly less.

11. Plaintiff seeks monetary and injunctive relief against Defendant for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.;* California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the California Consumer Legal Remedies Act ("CLRA").

## JURISDICTION

12. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Los Angeles, California. Defendant conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiff complains of occurred in this District.

## VENUE

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

15. In addition, venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and is subject to this Court's personal jurisdiction.

16. In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing this District as the proper venue. Plaintiff's declaration is attached hereto as Exhibit A.

## PARTIES

17. Plaintiff Judith Nwaigbo is an individual who resides in California and purchased Defendant's GLP-1 Booster from Defendant's website. Before purchasing the GLP-1 Booster, Plaintiff saw an advertisement from HUM that referred to the GLP-1 Booster as "Fauxzempic." Plaintiff reasonably relied on HUM's deceptive advertising and believed the GLP-1 Booster would provide a natural alternative with comparable effects to actual GLP-1 medications. Plaintiff stopped using the GLP-1 Booster when she realized it had no noticeable impact on her hunger or satiety. Had Plaintiff known the

GLP-1 Booster only resulted in a modest and transitory increase to GLP-1, if at all, she would not have purchased the GLP-1 Booster or would have paid less for it.

18. Defendant HUM is a Delaware corporation with its principal place of business in Los Angeles, California, and is responsible for the false advertising and misleading statements that Plaintiff reasonably relied on when she purchased the GLP-1 Booster.

**FACTS**

19. Defendant markets and sells the GLP-1 Booster through its own website and through third-party retailers including Target and Amazon.

20. Defendant's advertising and marketing create a misleading and deceptive narrative that its GLP-1 Booster can naturally increase users' GLP-1 in a meaningful way comparable to GLP-1 agonist drugs like Ozempic.

21. On its website and other retail platforms, HUM prominently displays the claim that the GLP-1 Booster "doubles" GLP-1 levels, as reflected in ***Figures 1-4***.




***Figure 1: HUM website home page***




***Figure 2: HUM website GLP-1 Booster product page***




***Figure 3: HUM website GLP-1 Booster product page***




***Figure 4: GLP-1 Booster product page on Amazon.com***

22. HUM claims that its GLP-1 Booster is "clinically tested" to "double" GLP-1 levels in just one use." As support for this claim, HUM cites to a single study, "Ye et al. Nutrition Research. 2015," as shown in ***Figure 5***:

Doubles GLP-1 levels after one use to curb appetite†**

†10 g of Soluble Vegetable Fiber was clinically shown to increase GLP-1 2x 30 minutes after a meal and remain elevated for 4 hours compared to a placebo in a randomized controlled trial. Ye et al. Nutrition Research. 2015.

***Figure 5: HUM website GLP-1 Booster product page***

23. However, the study referenced by HUM only looked at the effects on GLP-1 through a *combination* of a meal *and* 10 grams of soluble fiber, not consumption

of 10 grams of soluble fiber alone. The study therefore does not support the claim made by HUM: that 10 grams of soluble fiber "doubles" GLP-1 after one use. HUM's claim that the GLP-1 Booster is "clinically tested" is false and misleading.

24. Further, even if HUM's GLP-1 Booster did "double" GLP-1 levels, the claim is misleading because "doubling" GLP-1 from a baseline level results in only a modest and transitory increase that has no meaningful impact on hunger and satiety.

25. Calling its product a "GLP-1 Booster," that "doubles" GLP-1 levels and allows consumers to "escape cravings," creates the misimpression that the GLP-1 Booster actually has appetite suppressing attributes that are sustained, meaningful, and unique to the product itself. In reality, consumers can achieve the same, if not better, natural GLP-1 levels just by eating regular food.

26. HUM also makes false and deceptive representations by drawing a comparison between the GLP-1 Booster and actual GLP-1 agonists like Ozempic. For example, HUM misleadingly advertises the GLP-1 Booster as providing the "Fauxzempic Effect" as shown in ***Figure 6***:




***Figure 6: GLP-1 Booster "Fauxzempic" Advertisement***

27. By combining its claims that the GLP-1 Booster "doubles" GLP-1 levels, "curbs" cravings, "controls" appetite, and makes you feel "fuller longer" through the "Fauxzempic Effect," HUM creates the misimpression that the GLP-1 Booster provides comparable results to actual GLP-1 agonist medications like Ozempic. In fact, the GLP-1 Booster provides only a modest and transitory increase in GLP-1, if at all, while actual GLP-1 agonists like Ozempic have a half life of up to 7 days, resulting in sustained and dramatic appetite suppression.

28. Users of the GLP-1 Booster pay a premium for what they believe is a product that has a meaningful and sustained impact on hunger and satiety, similar to actual GLP-1 agonist medications. In reality, they are simply overpaying for a fiber supplement that, when combined with a meal, may result in a modest and transitory increase to GLP-1 similar to eating regular food.

29. HUM's deceptive marketing of the GLP-1 Booster attempts to "capitaliz[e] on the GLP-1 craze."[1]

30. This "craze" includes pushing "supplements claiming to replace GLP-1 agonists completely, 'natural' versions of GLP-1 agonists that may work but be substantially less effective, and supplements intended to be taken alongside prescription medicine to 'boost' GLP-1 production."[2]

31. However, as C. Michael White, a professor of pharmacy practice at the University of Connecticut School of Pharmacy has observed, "The marketing seems to suggest that you could get with these natural products, these natural ingredients, the same effect that you can get with GLP-1 agonists, which is simply not the case. And in that way, they are being misleading to people."[3]

## CLASS ALLEGATIONS

32. Plaintiff Nwaigbo brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of herself and the following proposed "Nationwide Class":

> All persons in the United States who purchased the GLP-1 Booster within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

33. Plaintiff Nwaigbo also brings this action on behalf of herself and on behalf of the following proposed "California Class":

> All persons in California who purchased the GLP-1 Booster within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

34. Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and

---

[1] Hannah Grabenstein, *In the Gray World of GLP-1 Supplements Online, Health Experts Urge Caution*, PBS NEWS (July 28, 2024), https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok

[2] *Id.*

[3] *Id.*

the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

35. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence she would use to prove those elements in individual actions alleging the same claims.

36. This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiff can demonstrate the elements delineated below.

37. <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiff believes that there are thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

38. <u>Ascertainability</u>. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

39. <u>Commonality and Predominance.</u> This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A. Whether Defendant engaged in the conduct alleged in this Complaint;

B. Whether Defendant violated the applicable statutes alleged herein;

C. Whether Defendant's conduct emanated from the State of California;

D. Whether Plaintiff and the class members are injured and harmed directly by Defendant's conduct;

E. Whether Plaintiff and the class members are entitled to damages due

to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

F. Whether Plaintiff and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

40. Typicality. Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for Plaintiff and class members.

41. Adequacy. Plaintiff is an adequate proposed class representative because her interests do not conflict with the interests of the other members of the proposed Classes she seeks to represent; because she has retained counsel competent and experienced in complex class action litigation; and because she intends to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiff and her counsel. *See* Fed. R. Civ. P. 23(a)(4).

42. Declaratory and Injunctive Relief. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

43. Superiority. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

44. Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

45. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

## CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS

46. California's substantive laws apply to every class member, regardless of where in the United States the class member resides.

47. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiff and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

48. Defendant's principal place of business is located in California. On information and belief, Defendant also owns property and conducts substantial business in California. Therefore, California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California,

renders the application of California law to the claims herein appropriate and constitutionally permissible.

49. Upon information and belief, California is also the state from which Defendant's alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

50. The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts with Plaintiff, and the claims of Plaintiff and the proposed Classes. California also has a greater interest in applying its laws here than any other interested state.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code § 17200 et seq.**

**(On behalf of Plaintiff and the Classes)**

51. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

52. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

53. Defendant's false and misleading advertising claims regarding the GLP-1 Booster violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

54. First, Defendant's representations and omissions regarding the GLP-1 Booster are unlawful because they are misleading to a reasonable consumer and violate the CLRA and FAL as alleged herein.

55. Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the GLP-1 Booster are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's

conduct.

56. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

57. Plaintiff reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

58. As a direct and proximate result of Defendant's violations of the UCL, Plaintiff, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiff, the Nationwide Class, and the California Class paid an unwarranted premium for the GLP-1 Booster and/or were denied the benefit of the bargain.

59. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the GLP-1 Booster or would have paid substantially less for it.

60. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the product has no market value, whereas that showing is not required for restitution.

61. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the GLP-1 Booster. Plaintiff remains in the market for products that have a meaningful and sustained impact on appetite suppression, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so absent an injunction.

Injunctive relief is therefore appropriate because Defendant continues to deceptively market the GLP-1 Booster as supplement that increases GLP-1 to levels comparable with Ozempic. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the Nationwide and California classes which cannot be achieved through available legal remedies.

62. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct.

63. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**SECOND CLAIM FOR RELIEF**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Business & Professional Code § 17500 *et seq*.**

**(On behalf of Plaintiff and the Classes)**

64. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

65. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

66. The FAL prohibits not only advertising that is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

67. Defendant violated section 17500 when it advertised and marketed the GLP-1 Booster through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the GLP-1 Booster is a supplement that is capable of replicating the results of GLP-1 agonist medications such as Ozempic and that "doubling" one's GLP-1 can have a meaningful and sustained impact on hunger and satiety. In reality, the GLP-1 Booster increases the fiber intake of the user and may, when combined with a meal, result in a modest and transitory increase to GLP-1.

68. Plaintiff reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the product.

69. As a direct and proximate result of Defendant's violations of the FAL, Plaintiff and the Classes have suffered injury in fact and have lost money. Plaintiff and the Classes paid an unwarranted premium for the GLP-1 Booster and/or were denied the benefit of the bargain.

70. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the GLP-1 Booster or would have paid substantially less for it.

71. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the product has no market value, whereas that showing is not required for restitution.

72. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the GLP-1 Booster. Plaintiff remains in the market for products that have a meaningful and sustained impact on appetite suppression, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so absent an injunction. Injunctive relief is therefore appropriate because Defendant continues to deceptively market the GLP-1 Booster as supplement that increases GLP-1 to levels comparable with Ozempic. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the Nationwide and California classes which cannot be achieved through available legal remedies.

73. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct.

74. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**THIRD CLAIM FOR RELIEF**

**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.***

**(On behalf of Plaintiff and the Classes)**

75. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

76. Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

77. Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

78. Defendant's GLP-1 Booster is a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

79. Defendant has violated § 1770(a)(5) by representing that the GLP-1 Booster had characteristics it did not have.

80. Defendant has violated § 1770(a)(7) by misrepresenting that the GLP-1 Booster is of a particular standard, quality, or grade.

81. Defendant has violated § 1770(a)(9) by advertising the GLP-1 Booster with an intent not to sell it as advertised.

82. Defendant's acts, practices, and omissions, set forth above, led customers to falsely believe that the GLP-1 Booster is a supplement that can increase users' GLP-1 to levels comparable with GLP-1 agonist medications such as Ozempic. In

reality, the product does not and cannot deliver the advertised benefits.

83. Plaintiff reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the GLP-1 Booster an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the product.

84. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff and the Classes. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the GLP-1 Booster or would have paid substantially less for it.

85. Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the product has no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

86. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the GLP-1 Booster. Plaintiff remains in the market for products that have a meaningful and sustained impact on appetite suppression, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so absent an injunction. Injunctive relief is therefore appropriate because Defendant continues to deceptively market the GLP-1 Booster as supplement that increases GLP-1 to levels comparable with Ozempic. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the Nationwide and California classes which cannot be achieved through available legal remedies.

87. **Permanent public injunctive relief.** Plaintiff also seeks public

injunctive relief to protect the general public from Defendant's conduct.

88. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Classes, prays for relief and judgment against Defendant as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes, and designating Plaintiff's counsel as class counsel;

B. Awarding Plaintiff and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

D. For declaratory and equitable relief, including restitution and disgorgement;

E. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

F. Awarding Plaintiff and the class members the costs of prosecuting this action, including expert witness fees;

G. Awarding Plaintiff and the class members reasonable attorneys' fees and costs as allowable by law;

H. Awarding pre-judgment and post-judgment interest; and

I. Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: October 3, 2025

By: */s/Ryan Ellersick*

Caleb Marker
Ryan J. Ellersick
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

JANOVE PLLC

Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

*Attorneys for Plaintiff and the Proposed Classes*

# EXHIBIT A

I, Judith Nwaigbo, declare:

1. I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3. As set forth in the Complaint, Defendant Hum Nutrition has its principal place of business in Los Angeles, California. The Central District of California is the proper place for the trial of this action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Oct 02, 2025

Date

Judith Nwaigbo